IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JAMIE MARIE GRAHAM**                                                 **PLAINTIFF**

**V.**                   **No. 4:23-CV-00396-KGB-PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration**                                   **DEFENDANT**

### RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.      Introduction:**

Jamie Graham applied for Title II disability benefits on August 12, 2020, alleging disability beginning August 31, 2017. (Tr. 12). Her claim was denied both initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. During the hearing, Graham amended her alleged onset date to September 14, 2019. *Id*. The ALJ thereafter denied her application on June 14, 2022. (Tr. 22). The Appeals

1

Council denied her request to review the decision. (Tr. 1). The ALJ's decision stands as the final decision of the Commissioner.

Graham now seeks judicial review of the decision. For the reasons stated below, the Court should affirm.

II.     **The ALJ's Decision:**

The ALJ found Graham had not engaged in substantial gainful activity since her alleged onset date of September 14, 2019. (Tr. 15). At Step Two of the sequential five-step analysis,[1] the ALJ found Graham had the following severe impairments: diabetes mellitus, a headache disorder, degenerative disc disease, carpal tunnel syndrome, hip bursitis, and bilateral cubital tunnel syndrome with ulnar nerve compression. (Tr. 15). After finding that none of these impairments or combination of impairments met or medically equaled a listed impairment, the ALJ determined that Graham would be able to perform sedentary work with the following limitations: (1) she could only occasionally stoop, kneel, crouch, and bend; (2) she could only occasionally reach overhead; (3) she was limited to frequent, versus constant, fingering and handling; and (4) she required the use of a cane. (Tr. 17-18).

Relying upon the testimony of a vocational expert, the ALJ found that Graham was able to perform her past relevant work as a mapper, as well as other unskilled sedentary

---

[1] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

occupations existing in significant numbers in the national economy, such as food and beverage clerk, document preparer, and addresser. (Tr. 21-22). The ALJ concluded that Graham was not disabled. (Tr. 22).

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is contradictory evidence in the record. The test is whether there is substantial evidence in the record as a whole to support the decision of the ALJ. *Miller*, 784 F.3d at 477.

#### B. Arguments on Appeal

Graham makes three arguments on appeal: (1) that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence; (2) that the ALJ did not include and properly evaluate Graham's thoracic impairment at Step Two; and (3)

that the ALJ improperly weighed medical opinion evidence. Substantial evidence in the record supports the ALJ's decision on all counts.

Graham first argues that the ALJ neglected to fully account for the entirety of Graham's bilateral upper extremity limitations when assessing her RFC. The ALJ found that Graham could perform sedentary work with restrictions for frequent fingering and handling and occasional overhead reaching. Graham claims that the ALJ misconstrued her testimony and selectively considered only medical evidence that aligned with a decision to deny disability, neglecting to consider evidence of more severe limitation.

Graham had cervical arthroplasty in February 2020, right-side carpal tunnel release and ulnar nerve decompression in October 2020, and left-side carpal tunnel release and ulnar nerve decompression in January 2022. (Tr. 394, 717, 943). Medical records establish that following the first two procedures, Graham progressed slowly. (Tr. 394, 404, 415, 734, 737, 779, 782, 816-817). Graham testified at the hearing that even with the surgeries, her hands still "go numb." (Tr. 38). When asked if she was worse off since she had the procedure done on both hands, Graham stated that "I don't feel I'm better. I don't think it's worsening, but there's still the numbness and I can't hold nothing. I constantly drop stuff." (Tr. 43).

When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926

4

F.3d 1004, 1012 (8th Cir. 2019). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the claimant's complaints of pain . . . and whether the evidence so contradicts the claimant's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738-739 (8th Cir. 2004). Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

The ALJ found that Graham's medically determinable impairments could reasonably cause some of her alleged symptoms but that her claims regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the record. (Tr. 19). Citing a "careful consideration of the evidence," the ALJ found that there was "no medical reason why the claimant is unable to lift at least 20 pounds of weight and no medical reason why she would be unable to perform the ambulatory requirements of at least sedentary work." *Id*. "There is no medical support for [Graham's] allegations of severe symptoms or functional deficits." *Id*.

The ALJ noted that physical and neurological examinations during the relevant period were generally within normal limits and showed normal strength in all extremities, normal gait, normal coordination, and no significant neurological abnormalities. (Tr. 397, 400, 777, 1024-25). Graham did not present in acute distress at any medical examination. (Tr. 19). The ALJ cited to NCV/EMG testing that indicated only mild to moderate left carpal tunnel syndrome and minimal focal neuropathy of the left ulnar nerve at the elbow prior to her surgery on her left hand. (Tr. at 936). The ALJ found the medical consultant's

5

opinion that Graham could perform light work supported by evidence, consistent with medical records, and generally persuasive. (Tr. 20). Despite Graham's symptoms and impairments, the ALJ noted that Graham was able to exercise, care for her own personal needs, clean, prepare food, drive a car, go shopping, handle finances, and crochet for short periods. (Tr. 19). Here, the ALJ considered all relevant factors and sufficiently explained how the evidence supported his credibility assessment.

Next, Graham argues that although the ALJ listed degenerative disc disease at Step Two, the ALJ should have separately included severe thoracic impairment. Under Eighth Circuit precedent, "the failure to list a specific impairment at step two is not an error unless the impairment is 'separate and apart' from the other listed impairments." *Gregory v. Comm'r, Soc. Sec. Admin.*, 742 F. App'x 152, 156 (8th Cir. 2018). Graham's thoracic impairment is not separate and apart from her degenerative disc disease. In fact, Graham's entire spine is impaired—cervical, thoracic, and lumbar, and the ALJ considered all her spinal limitations in his opinion. (Tr. 15-16, 18-20). Nonetheless, any error in not considering Graham's thoracic impairment at Step Two was cured when the ALJ considered "all of the claimant's medically determinable impairments, including those that are not severe" when determining her RFC. (Tr. 17).

Finally, Graham contends that the ALJ erred in rejecting the opinion of Rhonda Dixon, APRN, who opined that Graham needed an assistive device for walking and could not walk 100 feet without stopping; that she suffered more than one migraine headache per week requiring her to miss work more than one day a week; and that she "would qualify and benefit from disability due to her poor prognosis of recovering" from "chronic lifelong

conditions." (Tr. 872, 929, 1053). Graham contends that the ALJ did not account for the specific limitations outlined by Dixon in determining Graham's RFC and further that the ALJ inappropriately rejected Nurse Dixon's opinion as a proper medical source because she was not a physician.

The ALJ found Dixon's opinion regarding Graham's ambulatory limitations "somewhat persuasive" but also pointed out that examinations done after Dixon had rendered her opinion showed that Graham had normal non-antalgic gait and did not appear to be in acute distress. (Tr. 20). Nonetheless, the ALJ limited Graham to sedentary work and indicated that she would require the use of a cane, limitations that were consistent with Dixon's opinion that Graham could not walk more than 100 feet without stopping and needed to use an assistive device for walking.

As to Graham's migraines, the ALJ found Dixon's opinion unpersuasive because her opinion was not supported by treatment records establishing that level of frequency or severity of headaches. Specifically, the ALJ found no records from Conway Regional Medical Clinic during the relevant period to support Dixon's opinion. (Tr. 20). In support of her claim on appeal, Graham points to medical records from 2018—before her alleged onset of disability—and one record from February 2020 when Graham reported headaches associated with her right-side pain that had started a week prior. (Tr. 619). Under these circumstances, the record supports the ALJ's finding.

The ALJ also found unpersuasive Dixon's opinion that Graham was disabled due to her chronic medical conditions. The ALJ provided various reasons for rejecting Dixon's opinion, including that Dixon failed to provide specific functional limitations other than

7

the need for a cane to ambulate and that her opinion was inconsistent with and not supported by her own treatment record, which generally noted normal examinations and no assistive device. (Tr. 21). *See Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018) (stating that short checkbox opinions may properly be discounted if they are conclusory or unsupported by relevant medical evidence); *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (finding that the ALJ properly rejected a physician's assessment where it was inconsistent with the objective medical evidence and other evidence in the record). Moreover, the ALJ correctly noted that "the ultimate determination of disability is reserved to the Commissioner." (Tr. 20). "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner." *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007).

### IV.    Conclusion:

For the reasons stated above, the Court finds that substantial evidence supports the decision that Graham was not disabled. Judgment should be entered in favor of the Commissioner.

IT IS SO ORDERED this 23rd day of October 2023.

_____
UNITED STATES MAGISTRATE JUDGE