IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JAMIE GRAHAM                                                                                          PLAINTIFF

v.                                              Case No. 4:23-cv-00396-KGB

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION                                                                DEFENDANT

### ORDER

Before the Court is the Recommended Disposition ("Recommendation") submitted by United States Magistrate Judge Patricia S. Harris (Dkt. No. 12). Plaintiff Jamie Graham filed an objection to Judge Harris's Recommendation (Dkt. No. 13). After careful review of the Recommendation and Ms. Graham's objections, as well as a *de novo* review of the record, the Court adopts the Recommendation as its findings in all respects (Dkt. No. 12).

### I.   Background

Ms. Graham applied for Title II disability benefits on August 12, 2020, alleging a disability beginning on August 31, 2017 (Dkt. No. 12, at 1). Ms. Graham's application was denied initially and upon reconsideration (*Id.*). During a hearing before the Administrative Law Judge ("ALJ"), Ms. Graham amended her onset date to September 14, 2019 (*Id.*). The ALJ denied Ms. Graham's claim on June 14, 2022 (*Id.*). The ALJ found that Ms. Graham had not engaged in substantial gainful activity since September 14, 2019, the alleged onset date (*Id.*, at 2). The ALJ found that Ms. Graham had the following severe impairments: diabetes mellitus, a headache disorder, degenerative disc disease, carpal tunnel syndrome, hip bursitis, and bilateral cubital tunnel syndrome with ulnar nerve compression (*Id.*). The ALJ determined that Ms. Graham's impairment did not meet or equal a listed impairment and determined that Ms. Graham had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: (1) she

could only occasionally stoop, kneel, crouch, and bend; (2) she could only occasionally reach overhead; (3) she was limited to frequent, versus constant, fingering and handling; and (4) she required the use of a cane (*Id.*).  Based on testimony from a vocational expert ("VE"), the ALJ determined that Ms. Graham was able to return to her past work as a mapper, as well as other unskilled sedentary occupations existing in significant numbers in the national economy, such as food and beverage clerk, document preparer, and addresser and found that Ms. Graham was not disabled (*Id.*, at 2–3).  The Appeals Council denied Ms. Graham's request for review, and Ms. Graham requested judicial review of the ALJ's decision (*Id.*, 1–2).

On appeal, Ms. Graham contended that substantial evidence did not support the ALJ's decision to deny benefits and made arguments regarding the ALJ's sequential five-step analysis for determining disability (*Id.*, at 3-4).  Judge Harris determined that there is substantial evidence to support that the ALJ's RFC determination, that the ALJ properly considered all of Ms. Graham's impairments, and that the ALJ gave appropriate weight to the medical opinions (*Id.*, at 3–8).  After careful review of the Recommendation and Ms. Graham's objections, as well as a *de novo* review of the record, the Court concurs.

## II.     Objections

The Court writes separately to address Ms. Graham's objections which focus on Judge Harris's determination that the ALJ did not err when fashioning Ms. Graham's RFC regarding her upper extremities and dismissing her subjective allegations related to her upper extremities (Dkt. No. 13).  Ms. Graham maintains that the ALJ's rejection of her subjective allegations regarding her upper extremities was not supported by the record as a whole and that, despite overwhelming evidence demonstrating the ALJ's errors, Judge Harris erred by disregarding Ms. Graham's contentions (Dkt. No. 13, at 1, 4).

Ms. Graham objects that Judge Harris ignored the ALJ's mischaracterization of Ms. Graham's testimony regarding the allegations of her upper extremity disfunction and, from this, concluded that Ms. Graham's upper extremities became worse despite having surgery (Dkt. No. 13, at 1). Ms. Graham seeks to clarify by claiming that she testified that her symptoms were no worse following surgery and that she was limited in the use of her upper extremities before and after surgery (*Id.*, at 1–2). Ms. Graham argues that the ALJ compounded this error by citing records that indicated improved functioning, decreased symptoms, and normal findings and then misinterpreted a Nerve Conduction Study (Dkt. No. 13, at 2). Ms. Graham contends that improved symptoms in her upper extremities did not equate to improved pain, and her activities were improperly used by the ALJ to measure her upper extremity capacities (*Id.*, at 3).

Judge Harris notes that Ms. Graham argues that the ALJ "neglected to fully account for the entirety of [her] bilateral upper extremity limitations when assessing her [Residual Functional Capacity]." (*Id.*, at 4). Judge Harris noted that Ms. Graham had cervical arthroplasty in February 2020, right-side carpal tunnel release and ulnar nerve decompression in October 2020, and left-side carpal tunnel release and ulnar nerve decompression in January 2022 (Dkt. No. 6-9, at 19; 6-11, at 56; 6-13, at 3). Judge Harris pointed out that medical records establish that, following the first two procedures, Ms. Graham progressed slowly and that Ms. Graham had testified at the hearing that, even with the surgeries, her hands still "go numb." (Dkt. No. 6-9, at 19, 29, 39–40; 6-11, at 73, 76, 118, 122, 155–56). Judge Harris highlighted in her opinion the very testimony that Ms. Graham criticized the ALJ for mischaracterizing and stated that, when asked if she was worse off since she had the procedure done on both hands, Ms. Graham testified, "I don't feel I'm better. I don't think it's worsening, but there's still the numbness and I can't hold nothing. I constantly drop stuff." (Dkt. No. 12, at 4 (citing Tr. 43)).

The ALJ and Judge Harris both noted that physical and neurological examinations during the relevant time period were generally within normal limits and showed normal strength in all extremities (Dkt. Nos. 6-2, at 20; 12, at 5). For example, during an office visit to Hannah M. Ellis APRN on October 20, 2020, Nurse Ellis charted that Ms. Graham was doing well with improvement to her hand. Ms. Graham had, "[n]o complaints of numbness, tingling, or weakness to her arm but has some residual numbness to her 3rd finger." (Dkt. No. 6-11, at 56). Ms. Graham's pain was noted to be a zero out of ten, but she continued to take pain medication for her chronic neck pain (*Id.*). During a visit to David Edward Connor, D.O., on November 30, 2020, eight weeks post right carpal tunnel release, Dr. Connor observed that Ms. Graham was progressing slowly (Dkt. No. 6-11, at 118). Ms. Graham denied pain in her right wrist or at her right elbow incision and reported only experiencing numbness at the tip of her right third finger (*Id.*). On examination, Ms. Graham's muscle strength was noted to be 5/5 on all muscle groups (*Id.*, at 120). Dr. Connor encouraged Ms. Graham to increase slowly her activity and noted that he would see her back on an "as-needed basis." (*Id.*, at 121).

On January 18, 2021, Ms. Graham returned to Dr. Connor and complained that she experienced left forearm and hand pain associated with numbness and tingling (Dkt. No. 6-14, at 3). Dr. Connor's impression was mild bilateral carpal tunnel, minimal focal neuropathy of both ulnar nerves at elbow, and "abnormal EMG needle exam, suggesting a chronic C6 (+/- C5) radiculopathy." (*Id.*, at 27). Dr. Connor's impression was based on a nerve conduction study from December 10, 2019, performed at Baptist Hospital in Little Rock ("December 2019 Nerve Conduction Study") (*Id.*, at 30). Dr. Connor did not at that time prescribe any medication or treatment for Ms. Graham related to his diagnosis (Dkt. No. 6-14, at 7). During a visit to Dr. Connor on March 15, 2021, Ms. Graham complained that she experiences tingling in her left hand

4

in her fourth and fifth fingers when she is driving and with certain hand positions (Dkt. No. 6-13, at 29). Dr. Connor's impression remained the same, and again, Dr. Connor did not prescribe any treatment for Ms. Graham related to his diagnosis (Dkt. No. 6-13, at 33).

Ms. Graham had a nerve conduction study on October 13, 2021, but as Judge Harris points out in her Recommendation, the study indicated mild to moderate left carpal tunnel syndrome and minimal focal neuropathy of the left ulnar nerve at the elbow prior to her surgery on her left hand (Dkt. No. 6-13, at 10; 6-13, at 17). This finding was not that of the ALJ acting as a physician but instead was the conclusion of Michael Chester, M.D., who performed the study (Dkt. No. 6-13, at 17).

As Ms. Graham points out in her objections, following the nerve conduction study, Ms. Graham's physician performed left carpal tunnel release and ulnar nerve decompression on January 27, 2022 (Dkt. No. 6-13, at 3). In her brief, Ms. Graham maintains that she had deficits two weeks out from left ulnar decompression as evidence of ongoing problems with her upper extremities (Dkt. No. 13, at 2-3). However, Nurse Ellis noted that overall Ms. Graham was seeing some improvement following the surgery (Dkt. Nos. 7, at 10; 6-13, at 5).

Ms. Graham objects that the ALJ did not specifically discuss a physical therapy record from February 10, 2022, where Ms. Graham describes sharp, throbbing, and aching pain with stiffness, tingling, and numbness involving her neck, shoulders, elbows, and hands (Dkt. No. 7, at 10; 6-15, at 5). Ms. Graham described her pain as a nine out of ten (Dkt. No. 6-15, at 5). Specifically, Ms. Graham faults the ALJ and Judge Harris for not specifically discussing the exhibit when assessing her upper extremity limitations.

The ALJ stated that he had considered "the entire record" when making his findings (Dkt. No. 6-2, at 16). Additionally, the ALJ concluded, "[a]fter careful consideration of the evidence,"

5

that Ms. Graham's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Dkt. No. 6-2, at 20). The ALJ pointed to other evidence in the record during the relevant time period, including treatment records that discussed normal strength in all extremities, normal coordination, and no significant abnormalities, and assessed a lifting restriction of 25 pounds (Dkt. Nos. 6-9, at 19, 25; 6-11, at 116; 6-15, at 21–22).

The Court remains convinced, based on its *de novo* review, that there is substantial evidence to support the ALJ's determination that Ms. Graham is not disabled. Accordingly, the Court overrules Ms. Graham's objection.

Ms. Graham objects that the ALJ improperly utilized her activities to reject her allegations (Dkt. No. 13, at 3). Ms. Graham concedes that she can exercise, care for her own personal needs, clean, prepare food, drive, go shopping, handle finances, and crochet for short periods of time (Dkt. No. 13, at 3). Ms. Graham states, however, that these are not upper extremity intensive activities, with the exception of crocheting, which she can only do for about 10 minutes (*Id*.). In her Recommendation, Judge Harris stated that the ALJ considered all the relevant factors and sufficiently explained how the evidence supported his credibility determination (Dkt. No. 12, at 6). Under binding circuit precedent, ALJs and courts must consider a plaintiff's daily activity when evaluating subjective complaints of pain. *See Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003); *Shannon*, 54 F.3d at 487; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The Court is not convinced that the ALJ or Judge Harris improperly assessed Ms. Graham's ability to perform daily tasks based on its *de novo* review. The Court remains convinced, based on its *de*

*novo* review, that there is substantial evidence to support the ALJ's determination that Ms. Graham is not disabled. Accordingly, the Court overrules this objection.

Having considered these objections and the record evidence before the Court, the Court concurs with Judge Harris that there is substantial evidence to support the Commissioner's decision that Ms. Graham was not disabled, that the decision of the ALJ should be affirmed, and that this case should be dismissed with prejudice (Dkt. No. 12, at 8). In so finding, the Court overrules Ms. Graham's objections (Dkt. No. 13).

### III. Conclusion

For the above reasons, the Court adopts the Recommendation as its findings in all respects (Dkt. No. 12). The Court overrules Ms. Graham's objections (Dkt. No. 13). Ms. Graham's complaint is dismissed with prejudice (Dkt. No. 2). Judgment will be entered accordingly.

It is so ordered this 3rd day of September, 2024.

_____
Kristine G. Baker
Chief United States District Judge